FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 12, 2018

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DENISE MARIE PETERSON,<br><br>                    Plaintiff,<br><br>    vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>                    Defendant. | No. 2:17-cv-00049-FVS<br><br>REPORT AND<br>RECOMMENDATION TO GRANT<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT AND TO<br>DENY DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT<br><br>ECF Nos. 12, 16 |

BEFORE THE COURT are the parties' cross motions for summary

judgment. ECF Nos. 12, 16. This matter has been referred to the undersigned

magistrate judge for issuance of a report and recommendation. ECF No. 18. The

Court, having reviewed the administrative record and the parties' briefing, is fully

informed. For the reasons discussed below, IT IS RECOMMENDED Plaintiff's

Motion (ECF No. 12) be GRANTED and Defendant's Motion (ECF No. 16) be

DENIED.

REPORT AND RECOMMENDATION - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

REPORT AND RECOMMENDATION - 2

1  ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless

2  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

3  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

4  decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

5  *Sanders*, 556 U.S. 396, 409-10 (2009).

6  ## FIVE-STEP EVALUATION PROCESS

7          A claimant must satisfy two conditions to be considered "disabled" within

8  the meaning of the Social Security Act.  First, the claimant must be "unable to

9  engage in any substantial gainful activity by reason of any medically determinable

10  physical or mental impairment which can be expected to result in death or which

11  has lasted or can be expected to last for a continuous period of not less than twelve

12  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

13  "of such severity that he is not only unable to do her previous work[,] but cannot,

14  considering her age, education, and work experience, engage in any other kind of

15  substantial gainful work which exists in the national economy."  42 U.S.C. §

16  1382c(a)(3)(B).

17          The Commissioner has established a five-step sequential analysis to

18  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

19  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

20  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

REPORT AND RECOMMENDATION - 3

gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

REPORT AND RECOMMENDATION - 4

1  activities on a sustained basis despite her limitations, 20 C.F.R. § 416.945(a)(1), is

2  relevant to both the fourth and fifth steps of the analysis.

3  At step four, the Commissioner considers whether, in view of the claimant's

4  RFC, the claimant is capable of performing work that she has performed in the past

5  (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of

6  performing past relevant work, the Commissioner must find that the claimant is not

7  disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such

8  work, the analysis proceeds to step five.

9  At step five, the Commissioner considers whether, in view of the claimant's

10  RFC, the claimant is capable of performing other work in the national economy.

11  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

12  must also consider vocational factors such as the claimant's age, education and

13  past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

14  adjusting to other work, the Commissioner must find that the claimant is not

15  disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

16  other work, analysis concludes with a finding that the claimant is disabled and is

17  therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

18  The claimant bears the burden of proof at steps one through four above.

19  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

20  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

REPORT AND RECOMMENDATION - 5

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income on June 21, 2013,

alleging an onset date of June 15, 2009.  Tr. 191-97.  Benefits were denied

initially, Tr. 110-13, and upon reconsideration.  Tr. 117-21.  Plaintiff appeared for

a hearing before an administrative law judge (ALJ) on October 14, 2015.  Tr. 37-

77.  On November 10, 2015, the ALJ denied Plaintiff's claim.  Tr. 15-36.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful

activity since June 21, 2013, the application date.  Tr. 20.  At step two, the ALJ

found Plaintiff has the following severe impairments: low back pain due to mild

degenerative disc disease; headaches (possible occipital neuritis); plantar fasciitis;

and obesity.  Tr. 20.  At step three, the ALJ found that Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the

severity of a listed impairment.  Tr. 26.  The ALJ then concluded that Plaintiff has

the RFC

> to perform light work as defined in 20 CFR 416.967(b) with a sit/stand
> option every 60 minutes.  She can occasionally climb ramps or stairs,
> balance, stoop, kneel, and crouch, but never climb ladders, ropes, or
> scaffolds or engage in crawling.  She should avoid concentrated exposure to
> extreme temperatures and industrial noise, and avoid all exposure to
> industrial vibrations and hazards.

REPORT AND RECOMMENDATION - 6

Tr. 27.  At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 30.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that the Plaintiff can perform, including: cashier II, agricultural sorter, and hand packaging, candy store.  Tr. 31.  The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since June 21, 2013, the date the application was filed.  Tr. 32.

On December 12, 2016, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 12.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly weighed the medical opinion evidence; and

2.  Whether the ALJ properly weighed Plaintiff's symptom claims.

ECF No. 12 at 9-19.

REPORT AND RECOMMENDATION - 7

# DISCUSSION

## A.  Medical Opinion Evidence

Plaintiff faults the ALJ for discounting the opinion of treating physician Daniel Randolph, M.D., and the opinion of examining psychologist Kathleen Daly, M.D.  ECF No. 12 at 9-12.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a

REPORT AND RECOMMENDATION - 8

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

F.3d 821, 830-31 (9th Cir. 1995)).

　　　*1.  Daniel Randolph, M.D.*

　　　In May 2014, Plaintiff's treating physician, Dr. Randolph, completed a

questionnaire regarding Plaintiff's ability to do "*work-related activities on a day-

to-day basis in a regular work setting*." Tr. 358-61 (emphasis in original). Dr.

Randolph opined that Plaintiff experiences pain "continually" over the course of an

8-hour workday, sufficient to markedly interfere with concentration and/or

performance; and Plaintiff would need to take 8-10 unscheduled breaks during an

8-hour workday, lasting up to 30 minutes per break, and Plaintiff would need to lie

down or elevate an extremity during those breaks. Tr. 358-59. Dr. Randolph

further noted that Plaintiff could walk half a block without rest or severe pain;

could sit 5 minutes at time; could stand or walk 10 minutes at a time; and would

need to change positions "a lot." Tr. 359-60. Thus, Dr. Randolph limited Plaintiff

to sitting and standing/walking less than 2 hours total in an 8-hour workday; and

REPORT AND RECOMMENDATION - 9

1  opined that she is likely to be absent from work three or more times a month as a

2  result of her impairments.  Tr. 359, 361.  Finally, Dr. Randolph opined that he did

3  not feel Plaintiff would be able to hold any type of work due to pain and

4  discomfort and the use of sedating medications.  Tr. 361.  The ALJ accorded Dr.

5  Randolph's opinion no weight.  Tr. 29.  Because his opinion is contradicted by A.

6  Peter Weir, M.D., Tr. 354-57, the ALJ was required to provide specific and

7  legitimate reasons for rejecting Dr. Randolph's opinion.  *Bayliss*, 427 F.3d at 1216.

8         First, the ALJ found "Dr. Randolph made it clear he completed paperwork

9  for disability with the claimant's input, and as discussed [herein], she is not

10  entirely credible."  Tr. 29.  An ALJ may reject a physician's opinion if it is based

11  "to a large extent" on Plaintiff's self-reports that have been properly discounted as

12  incredible.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  In support

13  of this finding the ALJ cites to Dr. Randolph's treatment note, also in May 2014,

14  reporting that Dr. Randolph spent 20 minutes with Plaintiff "looking up her

15  medical records" and filling out disability paperwork together.  Tr. 380-81.

16  However, Dr. Randolph's notation that he filled out the disability paperwork

17  together with Plaintiff, standing alone, is not sufficient to support a finding that Dr.

18  Randolph relied "to a large extent" on Plaintiff's subjective complaints, as opposed

19  to the medical records also referenced by Dr. Randolph, and the observations made

20  during ongoing treatment of Plaintiff.  Moreover, as discussed in detail below, the

REPORT AND RECOMMENDATION - 10

1   ALJ erred in the overall assessment of Plaintiff's credibility.  Thus, this was not a

2   specific and legitimate reason, supported by substantial evidence, to reject Dr.

3   Randolph's opinion.

4        Second, the ALJ stated that "Dr. Randolph reported in March 2015 that

5   [Plaintiff] was on multiple medications but still had significant pain, and he turned

6   her care over to Michele Herring, FNP."  Tr. 30 (citing Tr. 394, 416-27).

7   However, the Court's review of the record does not support a finding that Dr.

8   Randolph "turned [Plaintiff's] care over" to Michele Herring; rather, Dr. Randolph

9   referred Plaintiff to "physical medicine specialist," Ms. Herring, for treatment of

10  chronic pain.  Tr. 394.  The Court agrees with Plaintiff that "[i]t is unclear what the

11  ALJ is implying here;" and further, that the referral to a pain management

12  specialist "does nothing but support" Plaintiff's claim.  ECF No. 12 at 16.  Thus, to

13  the extent the ALJ offered this statement as a reason to reject Dr. Randolph's

14  opinion, the Court finds it was not specific and legitimate.

15       The ALJ did not properly consider Dr. Randolph's opinion; and it must be

16  reconsidered on remand.

17       *2.  Kathleen T. Daly, M.D.*

18       In September 2013, examining psychiatrist Dr. Daly opined that Plaintiff is

19  capable of managing her own funds; capable of communicating effectively with

20  others; and would not need special instruction from a supervisor.  Tr. 351.   In

REPORT AND RECOMMENDATION - 11

1   addition, she found "[i]n terms of psychiatric symptoms, at the moment

2   [Plaintiff's] depression does seem significant enough that it may interfere with a

3   normal workweek or workday and I think that she would have an exacerbation of

4   symptoms in dealing with regular stress from the workplace." Tr. 351-52. The

5   ALJ accorded "some weight" to Dr. Daly's opinion, as a part of the step two

6   analysis, because it "is inconsistent with other observations in the record that

7   repeatedly note a normal mental status. There are times of crying related to

8   situational stressors (i.e. her relationship with her husband, her mother's death, her

9   daughter's moving, or 'that time of the year'), yet records from Dr. Randolph

10   describe her depression as 'under control' in a December 2013 visit." Tr. 26. The

11   consistency of a medical opinion with the record as a whole is a relevant factor in

12   evaluating that medical opinion. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

13   Thus, it was reasonable for the ALJ to consider consistent notes across the

14   adjudicatory period by Dr. Randolph, Plaintiff's treating physician, that Plaintiff

15   was "pleasant and cooperative," with "normal mood and affect," and that her

16   depression was stable. Tr. 297, 300, 303, 305, 308, 311, 315, 362, 367, 373, 376,

17   381, 383, 385, 391, 394. However, in light of the need to reexamine the medical

18   opinion evidence, Plaintiff's symptom claims, and the remaining steps of the

19

20

REPORT AND RECOMMENDATION - 12

sequential analysis including step two; the ALJ should also reconsider Dr. Daly's

opinion on remand.[1]

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for improperly discrediting her symptom claims.

ECF No. 12 at 9-14.

An ALJ engages in a two-step analysis to determine whether a claimant's

testimony regarding subjective pain or symptoms is credible. "First, the ALJ must

determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other

_____

[1] The ALJ also noted that it was "significant" that Dr. Daly found "a lot" of

Plaintiff's depression "seemed to be related to her pain and the amount of

functional limitations she had because of her pain, and if her pain was adequately

treated, then her depression would most likely improve, suggesting a situational

basis for her depression, which is well supported by this record." Tr. 26, 351.

However, a plain reading of the decision indicates that this reference to Dr. Daly's

opinion was offered in support of the ALJ's finding that Plaintiff's depression was

not a severe impairment at step two; rather than a reason to reject Dr. Daly's

opinion. As discussed above, Dr. Daly's opinion should be reconsidered upon

remand at all relevant portions of the sequential analysis.

REPORT AND RECOMMENDATION - 13

1   symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

2   "The claimant is not required to show that her impairment could reasonably be

3   expected to cause the severity of the symptom she has alleged; she need only show

4   that it could reasonably have caused some degree of the symptom." *Vasquez v.*

5   *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

6          Second, "[i]f the claimant meets the first test and there is no evidence of

7   malingering, the ALJ can only reject the claimant's testimony about the severity of

8   the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

9   rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

10  citations and quotations omitted).  "General findings are insufficient; rather, the

11  ALJ must identify what testimony is not credible and what evidence undermines

12  the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v.*

13  *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility

14  determination with findings sufficiently specific to permit the court to conclude

15  that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and

16  convincing [evidence] standard is the most demanding required in Social Security

17  cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

18  *Comm'r Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

19         In making an adverse credibility determination, the ALJ may consider, *inter*

20  *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

REPORT AND RECOMMENDATION - 14

claimant's testimony or between her testimony and her conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the

claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ generally found Plaintiff's "assertion of total disability under

the Social Security Act is not supported by the weight of the evidence." Tr. 28.

*1. Inconsistencies*

First, in discrediting Plaintiff's symptom claims, the ALJ identified multiple

alleged inconsistencies in the record.[2] Tr. 28. First, the ALJ found that Plaintiff

alleged disability since June 15, 2009 due to "[l]ower back, legs and arms go

numb, and depression," Tr. 211; "yet in a June 19, 2013 WorkFirst Documentation

Request, she claimed only 'heavy-periods-cramps-complex cyst, enlarged uterus'

---

[2] The ALJ also found that Plaintiff inconsistently claimed that she had difficulty

concentrating in her self-report and during a consultative examination, but also

said "she had no problems with memory or following instructions, which the

medical expert stated was impossible." Tr. 28. Defendant "concedes that the ALJ

erred in relying on this reason to reject Plaintiff's subjective complaints because

the medical expert did not state that this was impossible as the ALJ mistakenly

stated." ECF No. 16 at 8.

REPORT AND RECOMMENDATION - 15

1   and mild anemia during heavy periods, for which a hysterectomy was later

2   performed." Tr. 28 (citing Tr. 273-75). Contradiction with the medical record is a

3   sufficient basis for rejecting the claimant's subjective testimony. *Carmickle v.*

4   *Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v.*

5   *Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). However, as noted by Plaintiff, the

6   2013 "documentation request" was completed and signed by Plaintiff's

7   gynecologist, "whose treatment was limited to [gynecological] issues upon an

8   emergency room referral; and Plaintiff "obviously did not participate in the

9   completing of the paperwork as she is referred to in the third person and it is not in

10   her handwriting." ECF No. 12 at 10 (citing Tr. 273-78). Further, the Court's

11   independent review of the record confirms that at no time did Plaintiff claim she

12   was disabled due to gynecological symptoms. *See* Tr. 117 (claiming disability due

13   to "back, legs, arms, and depression); *see also* Tr. 237, 255. This was not a clear

14   and convincing reason to reject Plaintiff's subjective claims.

15       Second, the ALJ noted that (1) Plaintiff reported in September 2013 that she

16   stopped working as a bartender in 2009 because of pain and numbness in her lower

17   extremities, but then reported in October 2013 that she stopped working because of

18   back pain; and (2) Plaintiff reported in March 2012 that she had low back pain

19   since a motor vehicle accident, "yet [in September 2013] and in later documents,

20   she stated it was from tripping and falling at work." Tr. 28 (citing Tr. 316, 349-50,

REPORT AND RECOMMENDATION - 16

355).  In evaluating the credibility of symptom testimony, the ALJ may utilize

ordinary techniques of credibility evaluation, including prior inconsistent

statements.  *See Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir.1996).  As to the

first alleged inconsistency, the Court notes that Plaintiff steadily sought treatment

for low back pain, hip pain, and lower leg pain throughout the adjudicatory period;

and she claimed she was disabled due to pain in her back *and* legs.  Thus, the

minor discrepancy between "pain in lower extremities" and "back pain," in the

context of the overall record, is not a clear and convincing reason to discount

Plaintiff's symptom claims.  As to the second alleged inconsistency, the ALJ

further noted that Dr. Randolph's opinion confirmed that the motor vehicle

accident and the fall at work were two separate incidents; but nonetheless faulted

Plaintiff for "not mention[ing] the motor vehicle accident after the initial report."

Tr. 28, 358.  However, the March 2012 treatment visit cited by the ALJ in support

of this finding specifically notes that Plaintiff "has a patch of area on the anterior

right thigh that has been numb since *an L&I injury and* [motor vehicle accident]

about 10 years ago."  Tr. 316 (emphasis added).  Thus, the Court discerns no

inconsistency in Plaintiff's reference to the L&I injury as the cause of her injury in

the "later records" cited by the ALJ.  Additionally, the overall record includes

consistent references to both the L&I injury, and the motor vehicle accident,

together or singularly, as precipitating Plaintiff's back pain.  *See* Tr. 299, 307, 314,

REPORT AND RECOMMENDATION - 17

316, 349, 354, 369.  For all of these reasons, alleged inconsistent statements by Plaintiff was not a clear and convincing reason, supported by substantial evidence, to find her not credible.

### 2. *Daily Activities*

Second, the ALJ found Plaintiff's "testimony of her activities of daily living at the hearing are extremely limited (i.e. can only perform activities 1-2 minutes per day and needs help with self-care), which is inconsistent with her reports of record that she does do limited household tasks and is independent with self-care." Tr. 28.  Evidence about daily activities is properly considered in making a credibility determination.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "Even where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113. Here, the ALJ generally found that Plaintiff's testimony that her activities of daily living were "extremely limited," was inconsistent with her reports that she does "limited household tasks and is independent with self-care."  Tr. 28.  However, in making a credibility finding, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  *Holohan*, 246 F.3d at 1208.

REPORT AND RECOMMENDATION - 18

1    The Court's review of the records cited by the ALJ in support of this finding

2    include Plaintiff's reports that she was unable to stand for long periods of time;

3    used a scooter at the grocery store; had difficulties with cleaning and cooking; and

4    "painfully goes through her chores at home, but she can't vacuum or sweep."  Tr.

5    350, 401.  The ALJ also cited to Plaintiff's report that she fed the dogs; spends

6    most of the day watching television; her husband does the cooking; her daughter

7    does the laundry; both her son and daughter do the housework; her husband does

8    the vacuuming and sweeping; her son makes her bed for her; and she does not

9    drive.  Tr. 355.  As noted by Plaintiff, there was arguably a minor inconsistency

10   between Plaintiff's more recent testimony that she needed help from her husband

11   to get out of the bathtub and put on her shoes and socks; and her prior report that

12   she was independent in bathing, dressing, and toileting.  ECF No. 12 at 12; Tr. 66,

13   355.  However, the Ninth Circuit has consistently held that a claimant need not be

14   utterly incapacitated in order to be eligible for benefits.  *See Orn*, 495 F.3d at 639

15   ("the mere fact that a plaintiff has carried on certain activities…does not in any

16   way detract from her credibility as to her overall disability.").  Moreover, it is

17   unclear how the limited activities cited by the ALJ, in the full context of the record,

18   contradict Plaintiff's testimony that she can walk for half a block; can stand for

19   three minutes before "it starts hurting;" cannot bend over, squat, lift, or carry; can

20   sit for seven minutes before she has to change positions; attempts to dishes but

REPORT AND RECOMMENDATION - 19

1    only for a few minutes at a time; does not drive; and her husband and children do

2    the laundry and house work.  Tr. 61-66.  For all of these reasons, the ALJ's finding

3    regarding Plaintiff's "activities of daily living" is not supported by substantial

4    evidence, and is not a clear and convincing reason to find Plaintiff not credible.

5        *3.  Poor Work History*

6        Third, the ALJ found that Plaintiff "did no work from 2002 to 2007, and

7    very limited earnings are reported in 2007-2009, thus calling into question the

8    motivation to be employed even when not alleging she is disabled."  Tr. 28.

9    Plaintiff argues that Plaintiff's "work record shows no more than she quit working

10   due to her injury in 2001 and unsuccessfully attempted to return to work in 2007

11   and 2009."  ECF No. 12 at 13.  However, as noted by Defendant, this explanation

12   of Plaintiff's work history is "without citation to any specific evidence in the

13   record."  ECF No. 16 at 8.  In general, it is appropriate for the ALJ to consider

14   Plaintiff's poor work history when evaluating her credibility.  *Thomas*, 278 F.3d at

15   959.  That said, as discussed herein, the overall credibility finding was not

16   supported by substantial evidence; thus, this reasoning should be reconsidered

17   upon remand.

18       *4.  Failure to Seek Treatment*

19       Fourth, the ALJ noted that "despite alleging disability since 2009, there are

20   no treatment records until March 2012."  Tr. 28.  Unexplained, or inadequately

REPORT AND RECOMMENDATION - 20

explained, failure to seek treatment may be the basis for an adverse credibility

finding unless there is a showing of a good reason for the failure.  *See Orn*, 495

F.3d at 638.  An ALJ "will not find an individual's symptoms inconsistent with the

evidence in the record on this basis without considering possible reasons he or she

may not comply with treatment or seek treatment consistent with the degree of his

or her complaints."  Social Security Ruling ("SSR") 16-3p at *8 (March 16, 2016),

*available at* 2016 WL 1119029.  Here, Plaintiff argues that the ALJ "did not give

[Plaintiff] the opportunity to explain the gap in treatment records;" and contends

that "there may have been treatment but the records were not obtained."  ECF No.

12 at 10.  This argument is unavailing.  The ALJ's decision noted, in bold letters,

that Plaintiff's "attorney was asked at hearing, and verified on the record, that ALL

medical records material to this case have been provided at, or prior to, the

hearing."[3]  Tr. 18, 39-40.  In addition, Plaintiff argues that the ALJ failed to

---

[3] Plaintiff additionally argues that the ALJ's duty to develop the record was

triggered as to possible reasons for failing to seek treatment, however, the Court

finds it is unnecessary to reach this issue in light of the opportunity for Plaintiff to

submit additional evidence upon remand.  ECF No. 12 at 10-11; *Mayes v.*

*Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("[a]n ALJ's duty to develop the

REPORT AND RECOMMENDATION - 21

1  consider that she "had some difficulty having her insurance accepted and her

2  insurance status from 2009 until 2012 was not explored."  ECF No. 12 at 10 (citing

3  Tr. 377).  However, the record cited by Plaintiff as evidence of "difficulty having

4  her insurance accepted" was a single treatment visit in May 2014 indicating her

5  existing insurance did not cover physical therapy at that time.  Tr. 377.  Moreover,

6  as noted by Defendant, at no point in the record did Plaintiff "attribute her lack of

7  all medical treatment until March 2012 to a lack of insurance."  ECF No. 16 at 5.

8  For all of these reasons, it was reasonable for the ALJ to consider Plaintiff's

9  unexplained lack of treatment from the alleged onset date of June 2009, through

10  March 2012, in support of the adverse credibility finding.  *See Orn*, 495 F.3d at

11  638.

12      However, as discussed in detail above, many of the reasons offered by the

13  ALJ in support of the credibility finding were not clear and convincing.  Moreover,

14  in light of the need to reconsider the medical opinion evidence, as discussed in

15  detail above, the ALJ should also reconsider the credibility finding on remand.

16  Whether a proper evaluation of the medical opinions can be reconciled with the

17

18  _____

19  record is triggered only when there is ambiguous evidence or when the record is

20  inadequate to allow for proper evaluation of the evidence.").

REPORT AND RECOMMENDATION - 22

1  ALJ's existing adverse credibility determination is for the Commissioner to decide

2  in the first instance.

3                                        **REMEDY**

4          The ALJ's decision was not supported by substantial evidence and free of

5  legal error.  The decision whether to remand for further proceedings or reverse and

6  award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

7  888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate

8  where "no useful purpose would be served by further administrative proceedings,

9  or where the record has been thoroughly developed," *Varney v. Secretary of Health*

10  *& Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused

11  by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280

12  (9th Cir. 1990).  *See also Garrison*, 759 F.3d at 1021 (noting that a district court

13  may abuse its discretion not to remand for benefits when all of these conditions are

14  met).  This policy is based on the "need to expedite disability claims."  *Varney*,

15  859 F.2d at 1401.  But where there are outstanding issues that must be resolved

16  before a determination can be made, and it is not clear from the record that the ALJ

17  would be required to find a claimant disabled if all the evidence were properly

18  evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96

19  (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

20

REPORT AND RECOMMENDATION - 23

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  Further proceedings are necessary for the ALJ to reconsider the medical opinion evidence, and, if necessary, order additional consultative examinations and/or take additional testimony from medical and psychological experts.  On remand, the ALJ should also reconsider the credibility analysis; and the findings at step two of the sequential analysis.  Finally, the ALJ should reassess the RFC, and reconsider the remaining steps in the sequential analysis, if necessary.

**ACCORDINGLY, IT IS HEREBY RECOMMENDED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, be **GRANTED**; and the matter remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment, ECF No. 16, be **DENIED**.

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is

REPORT AND RECOMMENDATION - 24

directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination.  The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE MANAGEMENT DEADLINE ACCORDINGLY.**

DATED March 12, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION - 25